# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

JOANNE PITTS                                                                            PLAINTIFF

V.                                      CAUSE NO. 3:15-cv-892-CWR-LRA

CITY OF MADISON, MISSISSIPPI, et al.                         DEFENDANTS

## ORDER

This cause is before the Court on the Motion for Summary Judgment filed by Defendants City of Madison, Mississippi; Investigator Cole Terrell; and Chief Gene Waldrop (collectively, the "Madison Defendants"), Docket No. 48, and on the Motion for Partial Summary Judgment, filed by Plaintiff Joanne Pitts, Docket No. 73. The Motions are fully briefed and ready for adjudication.

**I.**      **Facts and Procedure**

On the night of May 1, 2014, Joanne Pitts and her brother Jeremy Shedd were driving separately on Highway 463 in Madison County. Pitts was in a red Chevrolet truck, and Shedd was in a gray Honda Accord. Both vehicles were owned by Pitts.

City of Madison Investigator Cole Terrell observed the Honda traveling at a very low rate of speed and swerving between lanes. He conducted a traffic stop. Terrell then smelled marijuana and asked Shedd to exit the car. A pat down search of Shedd yielded a clear tube of crystal methamphetamine and a small plastic bag containing marijuana. Terell arrested Shedd. After Shedd was taken into custody, Pitts' Honda was searched and seized.[1]

---

[1] The search of the Honda yielded a gun and a clear tube containing Xanax. Shedd was charged with driving with a suspended license, two counts of possession of a controlled substance while in possession of a firearm, and one count of possession of marijuana while in possession of a firearm. Over a year later, the State dropped all charges because of "insufficient evidence to obtain a conviction." Docket No. 71-1 at 6.

Around the same time Shedd was stopped, Agent Clark conducted a traffic stop of the Chevrolet. Clark identified the driver as Pitts, who admitted that she and Shedd often used drugs at her home and that Shedd regularly used her Honda to transport drugs.[2] Pitts gave consent for officers to search her home for drugs and was arrested based on an outstanding warrant.[3] Officers subsequently searched her home and found various drugs and drug paraphernalia. Pitts was charged with possession of marijuana and possession of drug paraphernalia.[4]

Later that night, Investigator Terrell served both Pitts and Shedd with a Notice of Intention to Forfeit Seized Property regarding the Honda. The notice instructed that Pitts and Shedd had 30 days to file a petition for judicial review or the Honda would be forfeited to the Madison Police Department. A petition was never filed. On June 23, 2014, MPD issued a Declaration of Forfeiture.

In July 2015, Pitts filed this action in the Madison County Circuit Court. She brought state claims of civil conspiracy and conversion. In November 2015, she amended her complaint to include constitutional violations under Section 1983. The action was properly removed to this Court pursuant to federal question jurisdiction.

The Madison Defendants now seek summary judgment on all claims. Pitts also seeks partial summary judgment on her Fourteenth Amendment claim, as well as other claims not included in her Amended Complaint. Specifically, she claims that the Madison Defendants violated the Excessive Fines Clause of the Eighth Amendment and the Mississippi Constitution

---

[2] Pitts subsequently submitted an affidavit recanting these admissions and denying loaning Shedd her car to transport drugs.
[3] After Pitts was arrested and her home was searched, Agent Clark and Investigator Terrell met with Pitts at the detention center and read her the Miranda warning. She then signed a "Voluntary Statement" form, in which she wrote that she gave the officers consent to search her home.
[4] In September 2015, Pitts was found not guilty of possession of marijuana and pled guilty to possession of paraphernalia.

and that the Madison Police Department, as a non-entity incapable of being sued, improperly sought and obtained title to her Honda.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that support it. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.,* 783 F.3d 527, 536 (5th Cir. 2015). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

When considering a summary judgment motion, the court "must view all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

### B. Qualified Immunity

Qualified immunity "protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). In other words, "qualified immunity generally protects all

but the plainly incompetent or those who knowingly violate the law." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To determine whether an official is entitled to qualified immunity, the court must determine: "(1) whether an official's conduct violated the plaintiff's constitutional rights, and (2) whether the right violated was clearly established at the time of the violation." *Poole v. City of Shreveport*, 691 F.3d 624, 637 (5th Cir. 2012) (citation omitted). "For a right to be clearly established under the second step of the qualified immunity analysis, the contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

### III.  Discussion

#### A.  Section 1983 Claims against Investigator Terrell

The parties discuss at great length the Fourth Amendment right to be free from unreasonable searches and seizure and the Fourteenth Amendment right to procedural due process.[5] Each will be considered below.

##### 1.  Fourth Amendment

---

[5] Pitts mentions a conspiracy claim but has failed to present any evidence of an agreement between two or more people. This claim is dismissed. In her discussion of the conspiracy claim, Pitts references a family photo of Terrell obtained from a posting on Facebook, attached as Exhibit 17 to Plaintiff's Response. Terrell moved to seal this photo as private information but failed to provide "clear and compelling reasons" for filing the photo under seal. L.U. Civ. R. 79(b). As such, the Court denies his Motion.

Pitts argues that the search and seizure of her Honda—the vehicle being driven by her brother—were unlawful because the traffic stop was "pretextual."[6] Investigator Terrell contends that the stop, search, and seizure were valid under the Fourth Amendment. The Court agrees with Terrell.

        a.        **Standing**

As an initial matter, Investigator Terrell asserts that Pitts "lacks standing to raise a constitutional claim" regarding the initial stop of the Honda. Docket No. 79 at 2. He cites no authority to support this contention.

A vehicle owner's Fourth Amendment interest in his vehicle is not limited to police intrusions occurring only while he is present. *See United States v. Kye Soo Lee*, 898 F.2d 1034, 1038 (5th Cir. 1990) (holding that the renter of a truck had standing to challenge the search of locked cargo while the truck was operated by others). Though Pitts was not present during the traffic stop, she maintained a reasonable expectation of privacy when she lent her car to her brother and therefore has standing.

        b.        **Initial Traffic Stop**

In *Whren v. United States*, the Supreme Court held that a traffic stop, even if pretextual, does not violate the Fourth Amendment if an officer has "probable cause to believe that a traffic violation has occurred." 517 U.S. 806, 810 (1996). "[P]robable cause to make a traffic stop exists, *inter alia*, when a defendant commits a traffic violation and a law-enforcement officer observes the violation." *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014).

---

[6] Pitts' Amended Complaint references her "unlawful arrest," Docket No. 1 at 27, but she has since clarified that she is not asserting any claims regarding her arrest because such claims "would render her guilty plea to charges to drug paraphernalia invalid." Docket No. 14 at 7.

Investigator Terrell pulled over Shedd for careless driving, a violation of Mississippi law.[7] "[A] court must reasonably interpret a wide range of factors when determining carelessness under the careless-driving statute." *Id*. "Mississippi's careless-driving statute is broadly worded to encompass drivers who fail to exercise due regard for the width . . . of the streets and highways." *Id*; *see, e.g., Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004) (determining that "swerving off the side of the road or crossing the marker lines constitutes probable cause for a traffic stop"); *Saucier v. City of Poplarville*, 858 So. 2d 933, 934 (Miss. Ct. App. 2003) (finding probable cause where a vehicle decreased its speed, "bump[ed] the centerline," then crossed "into the center lane and jerked . . . back into the right lane").

In his incident report, Terrell states that he observed the Honda "traveling at a very low rate of speed in a 45 mph zone" and "swerv[ing] from side to side, each time crossing over into the other lane." Docket No. 73-2 at 7.[8] His observations constituted probable cause to make a traffic stop.

### c. Search

"Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few specific exceptions." *United States v. Samuels*, 628 F. App'x 322, 322 (5th Cir. 2016) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). In this case, the defense argues that two exceptions validated the warrantless search of Pitts' car: (1) Investigator Terrell had probable cause to believe the car contained drugs; and (2) the search of the car was conducted incident to a valid arrest. We address each basis in turn.

---

[7] "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." Miss. Code Ann. § 63-3-1213.

[8] Pitts argues that the dash camera video shows no evidence of careless driving. But she fails to acknowledge that the camera turned on only *after* Terrell activated his cruiser's blue lights.

6

"It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. McSween,* 53 F.3d 684, 686 (5th Cir. 1995). "An officer has probable cause for an arrest when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Id.* at 689 (quotation marks and citation omitted). The Fifth Circuit has consistently held that the smell of marijuana alone may constitute probable cause to search a vehicle. *See, e.g., United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990) ("Distinctive odors, detected by those qualified to know them, may alone establish probable cause.").

Here, Terrell smelled marijuana as he spoke with Shedd at the car window. Terrell told Shedd to exit the vehicle and conducted a pat down search which revealed a clear plastic tube of methamphetamine and a small plastic bag of marijuana. Based on these findings, Terrell arrested Shedd. Terrell therefore had probable cause to search the Honda.

An officer may also search an arrestee's vehicle when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *United States v. Beene*, 816 F.3d 157 (5th Cir. 2016) (citing *Arizona v. Gant*, 556 U.S. 332, 343 (2009)). In this case, the crime of arrest was drug possession. Investigator Terrell had reason to believe that evidence relevant to this crime was in the Honda, justifying the warrantless search of Pitts' car.

Either exception to the warrant requirement justified the search of Pitts' car. Therefore, the search was valid under the Fourth Amendment.

### d. Seizure

Lastly, Pitts argues that her car was unlawfully seized by Terrell. The Court disagrees. The Fifth Circuit has "held that a warrant is not required to seize a vehicle on a public street when 'the police have probable cause to believe that the car contains evidence of crime.'" *United States v. Hernandez*, 518 F. App'x 270, 271 (5th Cir. 2013) (quotation marks and citation omitted). As discussed above, Terrell smelled marijuana emanating from the car, and the smell of marijuana alone constituted probable cause to seize the car. *Newton,* 463 F. App'x at 466.

Accordingly, the stop, search, and seizure of Pitts' car were valid. The Court grants summary judgment to Investigator Terrell as to Pitts' Fourth Amendment claim.

### 2. Fourteenth Amendment

Under Mississippi law, there are two types of civil forfeiture: administrative and judicial. If seized property is valued at more than $20,000, the government entity must file a petition for judicial forfeiture within 30 days from the date of seizure or "the subject property shall be immediately returned to the party from whom seized." *Id*. § 41-29-177.

For property valued at $20,000 or less, however, the government may use administrative forfeiture. Miss. Code Ann. § 41-29-176. In that case, a government representative must provide the property owner or any person in possession of the property at the time it was seized with a notice of intention to forfeit the seized property to include the following information:

> (a) A description of the property;
> (b) The approximate value of the property;
> (c) The date and place of the seizure;
> (d) The connection between the property and the violation of the Uniform Controlled Substances Law;
> (e) The instructions for filing a request for judicial review; and
> (f) A statement that the property will be forfeited to the seizing law enforcement agency if a request for judicial review is not timely filed.

*Id*. After receiving this notice, the interested party then has 30 days to file a petition for judicial review. If no timely petition is filed, the government entity's attorney may then prepare a written declaration of forfeiture.

Once an administrative forfeiture is complete, a federal court "lack[s] jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process." *United States v. Schinnell*, 80 F.3d 1064, 1069 (5th Cir. 1996). Due process requires that notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [forfeiture] action and afford them an opportunity to present their objections." *United States v. Robinson*, 434 F.3d 357, 362 (5th Cir. 2005) (quotation marks and citation omitted). Actual notice is not required. *Bailey v. United States*, 508 F.3d 736 (citing *Dusenbery v. United States,* 534 U.S. 161 (2002)).

In this matter, Pitts does not contend that the Notice was deficient. It is undisputed that Investigator Terrell served both Pitts and Shedd with a Notice of Intention to Forfeit Seized Property to initiate the administrative forfeiture of Pitts' Honda, and that the Notice complied with each statutory requirement of Mississippi Code § 41-29-176(4).[9] Pitts also concedes that she never filed for judicial review after she received this Notice.

Pitts, however, challenges the process by which Investigator Terrell initiated the administrative forfeiture of her car. She argues that Terrell intentionally undervalued her Honda beneath the $20,000 threshold so that it would fall under the provisions of administrative forfeiture, and place the onus on Pitts to file for judicial review within 30 days. Because the

---

[9] The Notice included a description of the property ("2013 Honda Accord"), the determined value of the property ("$19,888"), the date and place of the seizure ("May 1, 2014 in Madison County, Mississippi"), the connection between the property and the violation of the Uniform Controlled Substances Law (property was used or intended for use "to transport or facilitate the transportation, sale, receipt, possession, or concealment of controlled substances or property"), instructions for filing a petition contesting the forfeiture, and a statement that the vehicle would be forfeited to the Madison Police Department if a request for judicial review was not filed within 30 days. Docket No. 73-8.

9

actual value of her car was greater than $20,000, Pitts asserts that Terrell was required to initiate judicial proceedings within 30 days of the seizure and if he had failed to do so, MPD would have been required to return the Honda to her, pursuant to Mississippi Code § 41-29-177.

Pitts offers the expert testimony of a car appraiser to support this contention. Based on this testimony, Pitts argues that the fair market value of her 2013 Honda Accord EX-L Coupe 2D with a V-6 engine in July 2014 was $25,000—well over the $20,000 line. The value of $19,888 obtained by the MPD, according to the expert, was inaccurately based on a model with "a less valuable trim level and style" than her car. Docket No. 73-7 at 1-3.

Pitts contends that Terrell has even admitted to intentionally undervaluing her car even though he could not explain why he did. In a deposition, Terrell testified as follows:

```
10   Q.   Where did you get the value of $19,888?
11   A.   Kelley Blue Book.
12   Q.   Did you look at the Blue Book?
13   A.   I did.
14   Q.   And you know you wanted to keep it under $20,000?
15   A.   I did.
16        MR. GRIFFIN: Object to the form.
17   Q.   Why would you want to keep it under $20,000?
18        MR. GRIFFIN: Object to the form.
19.  A.   I don't have a clue.
```

Docket No. 73-5 at 27.

Terrell, though, disputes how the court reporter recorded his answer on line 15. He asserts that his actual answer was "I did?" suggesting that he was surprised or confused by the accusation. Docket No. 78-2. Two months after Terrell's deposition was taken, however, the court reporter was asked to review her audio recording to determine whether there should be a

period or question mark after the answer "I did." After listening to the recording several times in the presence of counsel for both parties, she stood by her original certification: "I did."[10]

Still, Terrell argues that Pitts should have challenged the valuation by filing for judicial review. In not doing so, she waived her opportunity to challenge the forfeiture of her car. The Court disagrees. The evidence demonstrates there is a genuine dispute as to whether Terrell purposefully undervalued Pitts' car so that it would fall under the provisions of administrative forfeiture.

Having found a constitutional violation, we turn to the second prong of qualified immunity. Pitts must show that Terrell's actions were objectively unreasonable in light of clearly established law. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

This analysis is complicated, and the Court is not ready to rule on the issue of qualified immunity today. Investigator Terrell's conduct is very concerning, but it is unclear from the parties' briefs: (1) whether Pitts has alleged a violation of a right in light of clearly established law, and (2) whether Terrell's conduct was objectively reasonable according to the established law.[11] The Court will set a hearing at which the parties should be prepared to present case law addressing these two questions.

---

[10] On March 17, 2017, the parties sent several emails and documents to Chambers, including the affidavit of Cynthia Johnson, the court reporter who transcribed Terrell's deposition and certified her original transcription of line 15, page 27. Johnson's affidavit renders Pitts' Motion to Strike Exhibit 2 Errata Sheet moot.

[11] We do know, for example, that officers are stripped of their qualified immunity when they knowingly and intentionally or with reckless disregard for the truth, make false statements in affidavits to support the issuance of a search warrant or providing evidence at a suppression hearing. *See Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991). In the context of seeking a warrant, "[a]n officer can 'have no reasonable grounds for believing that a warrant was properly issued' 'if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'" *Id*. (quoting, *United States v. Leon*, 468 U.S. 897, 923 (1984)). While we acknowledge there appears to be some confusion as to whether officers retain the shield of qualified immunity for certain conduct, *see Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) (Costa, J., concurring), the question here is whether Terrell's allegedly intentional and deliberate manipulation of the value of Pitts' vehicle when the motive for doing so is to deprive Pitts of her property should strip him of qualified immunity.

B.     **Section 1983 claims against the City of Madison**[12]

A plaintiff may hold a municipality liable for deprivations of constitutional rights undertaken pursuant to municipal policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "Municipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom." *Bishop*, 674 F.3d at 467 (citation omitted).

An official policy is "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan Cty., Okla.*, 219 F.3d 450, 457 (5th Cir. 2000) (quotation marks and citations omitted). An official policy is also found where "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*.

Before the municipality is found culpable, the plaintiff must also provide "evidence that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id*. More than negligence, deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id*.

1.     **Policy or Custom**

Pitts has failed to meet this standard. She lacks any evidence identifying an official policymaker that promulgated the City's allegedly unconstitutional policy. Although she names

---

[12] The claims against Investigator Terrell and Chief Waldrop in their official capacities are analyzed identically to the claims against the City of Madison, as "a suit against an official in his official capacity is no different from a suit against a governmental entity." *Idom v. Natchez-Adams Sch. Dist.*, 115 F. Supp. 3d 792, 798 (S.D. Miss. 2015) (quotation marks and citation omitted).

12

Madison's Chief of Police, Gene Waldrop, as a defendant, she does not direct the Court to any evidence in the record that Waldrop was an official policymaker. Even if an official policymaker were identified, it is still unclear that Pitts could establish a violation under *Monell*. Pitts has not shown that the City has a policy of violating the due process rights of citizens whose property has been seized.

Pitts contends that "the City of Madison had a policy or practice of purposely undervaluing seized property and trained their employees to value seized property under $20,000." Docket No. 76 at 20. Pitts relies exclusively on Investigator Terrell's admission that he intentionally undervalued Pitts' car. But a single incident fails to "provide context that would show a *pattern* of establishing a municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added). She has provided no other instances of MPD officers undervaluing seized property. Accordingly, Pitts has failed to demonstrate a "pattern so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. at 852 (citation omitted).[13] Based on this record, the City is entitled to summary judgment on this claim.

### 2. Failure to Supervise or Train

"In a § 1983 claim for failure to supervise or train, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quotation marks and citation omitted). "To establish deliberate

---

[13] Pitts also points to Terrell's testimony that this was standard practice, and that he was taught these practices through "training from numerous people at [the] Madison Police Department." Docket No. 76 at 21. But Pitts stopped there. There is no other evidence about what this training entailed. What was the substance of the training? Who provided it? When was it provided? Who authorized the training and was that alleged training adopted or sanctioned by the City's policymakers?

13

indifference, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.*

Pitts contends that this testimony shows Terrell's lack of knowledge and proper training regarding the valuation of seized vehicles. But Pitts has not attempted to establish a pattern of alleged violations; she again relies on a single incident of undervaluing seized property. Pitts cannot establish deliberate indifference on this thin record. Therefore, summary judgment will be granted to the City on Pitts' failure to supervise or train claim.

C. **State Law Claims**

Pitts has sought damages for conversion and violations of her rights under the Mississippi Constitution. Because Defendants are a municipality of Mississippi and its employees, her state law claims are governed by the Mississippi Tort Claims Act. *Roderick v. City of Gulfport, Miss.*, 144 F. Supp. 2d 622, 637 (S.D. Miss. 2000). The law "requires that anyone making a claim for injury arising under the provisions of the MTCA must file a written notice of the claim with the chief executive officer of the government entity ninety days prior to commencing an action against the entity or employee of the entity." *Gale v. Thomas*, 759 So. 2d 1150, 1158 (Miss. 1999) (citing Miss. Code Ann. § 11-46-11(1), (2)); *see also Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199, 202 (Miss. 1999) ("The Mississippi Legislature has conclusively stated that the one-year statute of limitations set out in § 11-46-11(3) applied to all actions against governmental entities under the Mississippi Tort Claims Act, regardless of any other statutes of limitations that would otherwise apply.").

Pitts has failed to demonstrate that she has met this notice of claim requirement. "Such an act is a jurisdictional prerequisite which must be fulfilled before a plaintiff may file suit."

*Simpson v. City of Pickens, Miss.*, 887 F. Supp. 126, 130 (S.D. Miss. 1995). As such, Pitts' state law claims against the City must be dismissed. *Roderick*, 144 F. Supp. at 637.

What remains are Pitts' individual-capacity claims against Terrell. Mississippi law provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2); *see Roderick*, 144 F. Supp. at 638 (finding that city officers could not be held personally liable for denial of due process rights under Mississippi State Constitution as long as they were acting in their official capacities). But an employee is not acting within the scope of his employment if his conduct constitutes "fraud, malice, libel, slander, defamation or any criminal offense." Miss. Code Ann. § 11-46-7(2).

Defendants argue that Pitts' state law claims against Terrell are barred by immunity because he was acting within the scope of his employment. Pitts has shown no evidence of fraud, malice, or criminal conduct. The Court accordingly dismisses Pitts' state claims against Terrell in his individual capacity.

### D. New Allegations Raised at Summary Judgment

Pitts raises two claims for the first time in her Partial Motion for Summary Judgment. She contends that (1) the Madison Defendants violated the Excessive Fines Clause of the Eighth Amendment of the U.S. Constitution and the Mississippi Constitution, and (2) "the Madison Police Department, as a non-entity incapable of being sued, improperly sought and obtained title" to her Honda. Docket No. 74. at 1.

"A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)). At the summary

judgment stage, plaintiffs who wish to assert a new claim must amend their complaint in accordance with Federal Rule of Civil Procedure 15(a). *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990). As such, Pitts cannot amend her Complaint by adding new claims in her summary judgment briefs. *See United States ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (concluding that the district court did not err in denying plaintiff's motion for partial summary judgment because he attempted to raise a new claim not asserted in his fifth amended complaint). The Court therefore denies Pitts summary judgment as to these claims.

**IV.     Conclusion**

The Court grants summary judgment to the Madison Defendants on all claims, except for Plaintiff's Fourteenth Amendment claim against Investigator Terrell in his individual capacity. The remaining issue is deferred for resolution at a hearing.

**SO ORDERED**, this the 4th day of December, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
